**BOIES SCHILLER FLEXNER LLP**
CHRISTOPHER G. CALDWELL, State Bar No. 106790
  *ccaldwell@bsfllp.com*
ERIC S. PETTIT, State Bar No. 234657
  *epettit@bsfllp.com*
725 South Figueroa Street, 31st Floor
Los Angeles, California 90017-5524
Telephone: (213) 629-9040
Facsimile: (213) 629-9022

Attorneys for Plaintiffs
AMTAX Holdings 463, LLC, and
Tax Credit Holdings III, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMTAX HOLDINGS 463, LLC, an Ohio limited liability company; and TAX CREDIT HOLDINGS III, LLC, a Delaware limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> KDF COMMUNITIES-HALLMARK, LLC, a California limited liability company, <br><br> Defendant. | Case No. <br><br><br> **COMPLAINT FOR:** <br><br> 1. **BREACH OF CONTRACT;** <br> 2. **BREACH OF FIDUCIARY DUTY;** <br> 3. **DISSOLUTION AND ACCOUNTING; AND** <br> 4. **APPOINTMENT OF RECEIVER** <br><br> **DEMAND FOR JURY TRIAL** |

# INTRODUCTORY STATEMENT

1. Plaintiffs AMTAX Holdings 463, LLC and Tax Credit Holdings III, LLC (collectively "Plaintiffs" or "AMTAX/TCH") are the Investor Limited Partner and Special Limited Partner of KDF Hallmark, L.P., a low-income housing tax credit ("LIHTC") limited partnership formed exclusively to develop, own, operate, and ultimately dispose of an affordable housing development in Redwood City, California (the "Partnership"). Plaintiffs collectively own more than 99% of the Partnership's equity. Until August 29, 2017, Defendant KDF Communities-Hallmark, LLC ("Defendant" or "KDF") was the Co-General Partner of the Partnership. The Partnership is governed by an Amended and Restated Agreement of Limited Partnership, as amended (the "Partnership Agreement").

2. On August 29, 2017, AMTAX/TCH exercised their right under Section 8.13 of the Partnership Agreement to remove KDF as the Partnership's Co-General Partner based on KDF's multiple material breaches of its fiduciary duties and contractual obligations under the Partnership Agreement. KDF's breaches include its failure to comply with its obligations under the Partnership Agreement, as amended by an amendment that the parties executed following a fire that substantially destroyed the affordable housing project in 2013, as well as its failure to rebuild the project and to provide audited financial statements and other financial information.

3. KDF's removal as the Partnership's Co-General Partner is subject to an arbitration proceeding with Judicial Arbitration and Mediation Services ("JAMS") in Orange County, California. On March 21, 2018, the JAMS arbitrator determined that the damages claims asserted herein are not within the scope of the Partnership Agreement's arbitration clause. AMTAX/TCH accordingly bring this action for damages, dissolution and accounting, and the immediate appointment of a receiver to facilitate the immediate sale of the Partnership's property in order to preserve its zoning entitlements that are necessary to maintain 72 units of affordable housing

1  and resolve multiples breaches of city ordinances, including the creation of a public
2  nuisance under Redwood City Code Section 14.72.

## PARTIES

4.  Plaintiff AMTAX Holdings 463, LLC ("AMTAX") is an Ohio limited liability company, and is the Partnership's Investor Limited Partner.  AMTAX's non-managing member is Omena, LLC, a Nevada limited liability company ("Omena").  The sole member of Omena, in turn, is Alden Pacific Holdings, LLC, a Delaware limited liability company ("Alden Pacific").  Alden Pacific's sole member, in turn, is Alden Torch Financial LLC, a Delaware limited liability company ("Alden Torch").  Alden Torch has four individual members, three of whom reside in and are citizens of Colorado.  The one member of Alden Torch who does not reside in Colorado is a citizen of Massachusetts.

5.  Plaintiff Tax Credit Holdings III, LLC ("TCH") is a Delaware limited liability company, and is the Partnership's Special Limited Partner.  TCH is the non-member manager of AMTAX.  TCH's sole member is Alden Pacific.  The ownership of Alden Pacific is as described above.

6.  Defendant KDF Communities-Hallmark, LLC ("KDF") is a California limited liability company, and was the Partnership's Co-General Partner prior to being removed on August 29, 2017.  On information and belief, KDF's members are KDF Communities, LLC, a California limited liability company, and Mark E. Hyatt, an individual residing in Orange County, California.

## JURISDICTION AND VENUE

7.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.  Defendant and its members are California citizens, while Plaintiffs and their members are not.  Plaintiffs, moreover, allege that Defendant breached its contractual and fiduciary

-2-                                                                                 CV 18-3604
                                                                                      COMPLAINT

duties by, *inter alia*, failing to cooperate in the release of more than $1 million in escrowed funds to Plaintiffs.

8. Plaintiffs seek the appointment of a receiver pursuant to Rule 66 of the Federal Rules of Civil Procedure.

9. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this district and the property that is the subject of this action is located in this district.

## FACTS

### A. The LIHTC Program

10. Congress passed the LIHTC provisions in Section 42 of the Internal Revenue Code ("Section 42") in order to promote private investment in the development of affordable housing. Section 42 permits investors who commit capital to developing and operating affordable housing projects to earn tax credits generated by those projects, as well as tax deductions arising out of any depreciation of the investor's capital account and other benefits attendant to their ownership interests.

11. LIHTC investments are typically structured as a limited partnership between an investor limited partner, who provides the necessary capital, and a general partner, who is responsible for developing and operating the project (and earns substantial fees for doing so). As is the case here, the investor partner typically acts in concert with a special limited partner, and the general partner is often either a qualified nonprofit organization focused on affordable housing, or works with such an organization, in order to receive certain favorable treatment under Section 42.

12. For a LIHTC investment to be treated as a partnership for tax purposes, the tax credits generated by the LIHTC project must be allocated proportionately in accordance with the partners' respective ownership interests in the partnership that

owns the project—i.e., the partnership must have "economic substance." As a result, investor limited partners and special limited partners such as AMTAX/TCH typically hold a 99% or greater ownership interest in the project partnerships in which they invest. While the tax credits and other tax advantages are a primary benefit of the investment, LIHTC partnerships must have a tax-independent expectation of profit, and the rights of investor limited partners and special limited partners such as AMTAX/TCH to share in any such profit are determined by the express terms of the applicable partnership agreements.

13. Partnership agreements for LIHTC partnerships contain provisions that help investor limited partners protect their capital investment. These provisions expressly spell out that the general partner owes a fiduciary duty to protect the interests of the limited partners. The provisions also include requirements that general partners obtain the consent of investor limited partners before committing the Partnership to significant capital transactions, as well as rights to remove general partners based on material breaches of contractual or fiduciary duties.

### B. The Partnership

14. The Partnership is a California LIHTC limited partnership created for the purpose of developing, owning, operating, and ultimately disposing of an affordable housing development in Redwood City, California (the "Hallmark House Apartments"). The Partnership and the respective rights and obligations of its partners are governed by the Partnership Agreement.

15. As Investor Limited Partner, AMTAX made substantial capital contributions to the Partnership in connection with the development and operation of the Hallmark House Apartments, and owns more than 99% of the ownership interests in the Partnership.

16. Prior to KDF's removal (which is currently the subject of the aforementioned JAMS arbitration), KDF was the Co-General Partner of the Partnership, and owed contractual and fiduciary duties to AMTAX/TCH and the

Partnership as set forth in the Partnership Agreement. By contrast, AMTAX/TCH, as limited partners in the Partnership, owed no fiduciary duties to KDF or the Partnership.

### C. The Fire

17. The Partnership developed and operated the Hallmark House Apartments for a number of years in compliance with the LIHTC program codified in Section 42. As a result, the Partnership generated low-income housing tax credits as intended, and those tax credits flowed to AMTAX/TCH based on their greater than 99% ownership interest in the Partnership.

18. In 2013, a fire destroyed substantially all of the Hallmark House Apartments, requiring the project to be taken out of service. The fire prevented the Partnership from remaining in compliance with the LIHTC requirements set forth in Section 42. As a result, the Partnership was unable to generate new tax credits, and a substantial percentage of the tax credits it had previously earned became subject to recapture.

19. The Partnership entered into a settlement agreement with the Partnership's insurer in June 2016 in connection with claims arising from the fire. The settlement agreement required that $1,170,236 of settlement proceeds (the "Escrow Deposit") be set aside in an interest bearing escrow account in order to compensate Plaintiffs for any recapture of tax credits. The Escrow Deposit was established because the partners hoped that a recapture of tax credits could be avoided in the event the Hallmark House Apartments was rebuilt within a reasonable period of time after receipt of the insurance proceeds.

20. In fact, after the insurance litigation was settled in June 2016, KDF took no steps to rebuild the project promptly, as would have been required for the Partnership to avoid the recapture of tax credits, despite repeated inquiries by AMTAX/TCH about what steps were being taken by KDF to move the rebuilding process forward. These inquiries were ignored by KDF. Because of KDF's

-5-   CV 18-3604
COMPLAINT

continuing delays, it eventually became evident that it would not be possible to avoid the recapture of tax credits, and that the partners would need to reach agreement on how to report the recapture of tax credits and allocate gains and losses associated with the recapture. After discussions between KDF and AMTAX/TCH concerning these issues, KDF and AMTAX/TCH agreed to file an amendment to the Partnership's 2013 tax return to recognize the recapture of the credits in that year. As a condition to filing the amended 2013 return, on April 17, 2017, KDF and AMTAX/TCH agreed to amend the Partnership Agreement (the "Seventh Amendment"). The purpose of the Seventh Amendment was, *inter alia*, "to acknowledge and confirm the manner in which the Partnership will report certain matters relating to the fire for federal and state income tax purposes" and address the allocation of Partnership gains and losses from 2013 through 2016.

21. Sections 2 and 3 of the Seventh Amendment required KDF, as the "Tax Matters Partner" for the Partnership, to file tax returns and amended tax returns in a manner consistent with schedules attached to the Seventh Amendment.

22. Section 5 of the Seventh Amendment required that, within five days, KDF "request a release of the Escrow Deposit from the Escrow Holder pursuant to the terms of the Settlement Agreement and direct the Escrow Holder to wire the funds to the Limited Partner pursuant to the wire instructions set forth in Schedule 3." Section 5 further required KDF to "cooperate in good faith and take such further action as may be required to obtain a release of the Escrow Deposit."

### D. The Removal

23. Despite repeated inquiries and demands from AMTAX/TCH and their counsel, KDF: failed to take any steps to rebuild the Hallmark House Apartments; failed to provide financial information that was required under the Partnership Agreement and necessary, *inter alia*, to understand what the Partnership had done with the insurance settlement proceeds; and failed to direct or cooperate in the

release of the Escrow Deposit to AMTAX/TCH as required under the Seventh Amendment.

24. Instead, KDF initially claimed that it would agree to cooperate in a sale of the project, which action was acceptable to AMTAX/TCH as long as KDF agreed to distribute the proceeds in accordance with the allocations that had been agreed upon in the Seventh Amendment. When KDF realized the implications of those allocations on its own pecuniary interests, however, it balked on its commitment to market and sell the property, and instructed the Partnership's tax preparer to file tax returns and amended tax returns in a manner that was inconsistent with the agreed-upon allocations in the Seventh Amendment. The tax returns that KDF sought to have filed would have significantly benefitted KDF and harmed AMTAX/TCH, in direct violation of the express terms of the Seventh Amendment and in breach of the fiduciary duties owed by KDF to AMTAX/TCH.

25. On August 29, 2017, in the face of KDF's continuing intransigence, refusal to rebuild, refusals to provide information, unwillingness to comply with its obligations under the Partnership Agreement, and efforts to have the Partnership file a damaging and inaccurate 2016 tax return and equally damaging and inaccurate amended 2014 and 2015 tax returns, AMTAX/TCH provided KDF with a Notice of Removal pursuant to Section 8.13 of the Partnership Agreement. The Notice of Removal indicated that KDF was being removed as the Co-General Partner of the Partnership for numerous independently sufficient reasons constituting breaches of KDF's contractual and fiduciary duties, including:

(a) KDF's continuing failure to execute documents necessary to cause the escrow holder to release the Escrow Deposit—totaling $1,170,236 plus interest—to AMTAX/TCH as required under Section 5 of the Seventh Amendment;

(b) KDF's continuing failure to provide an audited financial statement for the Partnership for 2016 in violation of Section 13.04(b)(ii) of the Partnership Agreement;

-7-   CV 18-3604
COMPLAINT

(c)  KDF's failure to provide information necessary to enable the Partnership and AMTAX/TCH to file timely, accurate, and complete tax returns in violation of Section 13.04(b)(iii)(A) of the Partnership Agreement and Sections 2 and 3 of the Seventh Amendment;

(d)  KDF's failure to provide quarterly financial reports and balance sheets as required by Section 13.04(b)(iv) and (v) of the Partnership Agreement;

(e)  KDF's persistent refusal, in violation of Section 13.04(d) of the Partnership Agreement, to provide a cash reconciliation of the insurance proceeds received by the Partnership in connection with the insurance coverage settlement agreement despite AMTAX/TCH's repeated requests for that information;

(f)  KDF's continuing failure to pay late penalties as required under Section 13.04(i) of the Partnership Agreement, warranting KDF's removal under Section 8.13(a)(ii)(H);

(g)  the amount of Actual Tax Credits for 2013 and 2014 being less than 90% of the Projected Credits for each of those years, warranting KDF's removal under Section 8.13(a)(ii)(J); and

(h)  the Partnership's failure to meet other requirements mandated by the Partnership Agreement, warranting KDF's removal under Sections 8.13(a)(ii)(D), (G), and (I).

26.  The Notice of Removal requested that KDF honor its contractual obligations by cooperating fully with the transfer of Co-General Partner responsibilities to Alden GP-CA, LLC.

27.  Instead of recognizing the validity of the Notice of Removal, KDF commenced the JAMS arbitration seeking a declaration of its continuing status as Co-General Partner.  That arbitration remains pending.

### E. The Third-Party Offer to Purchase and Preserve Low-Income Housing

28. While KDF has still not moved ahead with rebuilding the Hallmark House Apartments, in connection with the proposed efforts to sell the property in the fall of 2017, KDF engaged in various discussions with a real estate broker. During the course of those discussions, KDF was informed by a potential buyer, ROEM Development Corporation ("ROEM"), that the Partnership's existing building permits would expire in November 2017.

29. During the same time period, ROEM met with Redwood City planners about potentially purchasing and rebuilding the property, and the City agreed to extend the existing permits to June 21, 2018, which grandfather in favorable building standards for the reconstruction.

30. In particular, the existing permitting scheme would allow the property to be rebuilt, continue as a non-conforming use under the relevant zoning ordinance, and maintain 72-units of affordable housing. The current permits, however, are set to expire on June 21, 2018.

31. According to the Redwood City Planning Department, the zoning designation for the property is General Commercial (CG-R), with the "R" in the zoning designation indicating that residential uses are allowed. When the property was appraised in 2003, the appraiser determined that, based on these zoning standards, the property could be developed with approximately 20 dwelling units. Thus, if the current permits should expire, the property runs the risk of being able to provide less than half the number of affordable units as would be allowed under the expiring permits.

32. On or about May 9, 2018, the Partnership received a Letter of Intent ("LOI") with a bona fide third-party offer from ROEM to purchase the property for $5,000,000 cash, which offer notes that ROEM will obtain an extension of the existing permits in order to preserve and rebuild 72 units as low-income housing.

KDF, however, did not communicate the LOI to AMTAX/TCH and has indicated that it will not accept the LOI or continue to negotiate the terms of the sale with ROEM. Instead, on information and belief, KDF has determined that it would be in its own financial best interest to continue to own the property, even if doing so would jeopardize the maintenance of affordable housing, be to the financial detriment of AMTAX/TCH and the Partnership, and continue to constitute a public nuisance and violate multiple city ordinances.

33. Instead of selling the property to ROEM, maintaining the supply of affordable housing, and financially benefitting the Partnership and AMTAX/TCH, one month ago, KDF—for the first time in many years—purported to be interested in rebuilding the project. Even though the central issue in the ongoing arbitration involves whether KDF continues to be a general partner with the authority to act on behalf of the Partnership at all, KDF proposed that the Partnership incur approximately $14 million in capital expenditures for the rebuild. But after refusing to rebuild for almost five years and otherwise using delay to attempt to benefit itself to the detriment of the Partnership, AMTAX/TCH and the community, KDF's offer to rebuild is a transparent tactic to avoid accepting the offer from ROEM.

### F.  *Notice of Municipal Code Violations*

34. On May 23, 2017, the City of Redwood City sent KDF a Code Enforcement Notice for violation of Redwood City Code 14.72E and 14.72F, for overgrown vegetation that is likely to harbor rats or constitute a fire hazard and encroaches into the sidewalk.

35. On June 6, 2018, separate and apart from the May 23 notice, the Community Development Department of Redwood City sent a Notice of Pending Code Enforcement Action (the "Notice of Enforcement") to KDF. The Notice of Enforcement stated "your property has been boarded up for the past 5 years. The condition of your property constitutes a public nuisance . . . ." The Notice of Enforcement directed KDF to take corrective action or the matter will result in

immediate issuance of administrative code citations and referral of this matter to the City Attorney.

36. On June 15, 2018, the Mayor of Redwood City informed AMTAX/TCH that there are additional actions that the City is considering to eliminate the blight caused by the burned down property, and that the City would like to have the building rebuilt as soon as possible in order to restore affordable housing units to the community. AMTAX/TCH is informed and believes, and on that basis alleges, that the City would agree to another extension of the existing permits if a receiver is put in place to sell the property and/or the LOI with ROEM is executed for the sale of the property.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT

37. AMTAX/TCH reallege and incorporate by reference each and every allegation set forth above.

38. AMTAX/TCH and KDF are parties to the Partnership Agreement.

39. AMTAX/TCH have substantially performed their obligations under the Partnership Agreement.

40. KDF breached the Partnership Agreement by, among other things:

(a) failing to execute documents necessary to cause the escrow holder to release the Escrow Deposit to AMTAX/TCH in violation of Section 5 of the Seventh Amendment;

(b) failing to provide an audited financial statement for the Partnership for 2016 in violation of Section 13.04(b)(ii) of the Partnership Agreement;

(c) failing to provide information necessary to enable the Partnership and AMTAX/TCH to file timely, accurate, and complete tax returns in violation of Section 13.04(b)(iii)(A) of the Partnership Agreement and Sections 2 and 3 of the Seventh Amendment;

(d)  failing to provide quarterly financial reports and balance sheets to AMTAX/TCH as required by Section 13.04(b)(iv) and (v) of the Partnership Agreement;

(e)  failing to provide AMTAX/TCH with a cash reconciliation of the insurance proceeds received by the Partnership in connection with the insurance coverage settlement agreement in violation of Section 13.04(d) of the Partnership Agreement; and

(f)  failing to pay late penalties as required under Section 13.04(i) of the Partnership Agreement.

41.   Implied in the Partnership Agreement, as in every contract, is the covenant of good faith and fair dealing.  KDF breached the covenant of good faith and fair dealing by, among other things, interfering with AMTAX/TCH's receiving the benefits of the Partnership Agreement and the LIHTC program.

42.   Moreover, as a result of KDF's allowing the property to remain vacant and in disrepair, the Partnership has been cited for municipal code violations by Redwood City and is facing a potential enforcement action.

43.   As a direct and proximate result of KDF's conduct, AMTAX/TCH have suffered damages and may suffer additional damages in the future.  The exact amount of such damages is presently unknown, but is well in excess of $1 million. AMTAX/TCH are also entitled under Section 16.09 and/or 16.12(c) of the Partnership Agreement to recover their attorneys' fees, costs, and expenses.

**SECOND CAUSE OF ACTION**

**BREACH OF FIDUCIARY DUTY**

44.   AMTAX/TCH reallege and incorporate by reference each and every allegation set forth above.

45.   As Co-General Partner of the Partnership, KDF owes fiduciary duties to the Partnership and to AMTAX/TCH as the Investor Limited Partner and Special Limited Partner, including the duties of loyalty, care, good faith, and fair dealing.

46. KDF breached its fiduciary duties to AMTAX/TCH and the Partnership by subordinating the interests of the Partnership and AMTAX/TCH to their own interests, and/or by taking action on behalf of the Partnership in order to derive an improper benefit for themselves.

47. Moreover, KDF breached its fiduciary duties by allowing the property to remain vacant and in disrepair, and exposing the Partnership to a potential enforcement action for violations of the municipal code and for creating a public nuisance.

48. As a direct and proximate result of KDF's conduct, AMTAX/TCH have suffered damages and may suffer additional damages in the future. The exact amount of such damages is presently unknown, but is well in excess of $1 million. AMTAX/TCH are also entitled under Section 16.09 and/or 16.12(c) of the Partnership Agreement to recover their attorneys' fees, costs, and expenses.

49. KDF's breaches of its fiduciary duties were willful and intentional, and KDF acted with oppression, fraud, and malice. AMTAX/TCH are informed and believe and on that basis allege that KDF knew that its conduct was wrongful and calculated not to benefit the Partnership, but instead to benefit KDF to the detriment of the Partnership, AMTAX/TCH and the community. KDF therefore is subject to exemplary and punitive damages in accordance with California law.

**THIRD CAUSE OF ACTION**

**DISSOLUTION AND ACCOUNTING**

50. AMTAX/TCH reallege and incorporate by reference each and every allegation set forth above.

51. A judicial decree of dissolution is necessary because, as long as there is a dispute about the party with authority to act on behalf of the Partnership, it is no longer reasonably practicable to carry on the business of the Partnership in conformity with the Partnership Agreement and all relevant amendments thereto. KDF has, until a month ago, conceded that it is unwilling to rebuild the Hallmark

House Apartments, the development, operation, and disposition of which are the sole purpose of the Partnership. In addition, even if KDF is found to be the co-General Partner of the Partnership, KDF has demonstrated by its repeated violations of the Partnership Agreement that it is unwilling and/or unable to comply with its obligations as the Partnership's Co-General Partner.

52. For the reasons alleged herein, a decree of dissolution and an accurate and complete accounting of all of the Partnership's affairs are necessary. AMTAX/TCH are also entitled under Section 16.09 and/or 16.12(c) of the Partnership Agreement to recover their attorneys' fees, costs, and expenses.

## FOURTH CAUSE OF ACTION
## APPOINTMENT OF RECEIVER

53. AMTAX/TCH reallege and incorporate by reference each and every allegation set forth above.

54. The Partnership currently holds municipal permits entitling it to rebuild the Hallmark House Apartments with favorable building standards for the reconstruction, which would allow the property to maintain 72-units of affordable housing.

55. The Partnership has received a bona-fide third-party purchase offer from ROEM, which would facilitate the rebuilding of the property, the maintenance of affordable housing, and which would be financially beneficial to AMTAX/TCH and the Partnership.

56. KDF, however, has placed its own financial interests above the interests of AMTAX/TCH, the Partnership, and the community, all of which face the risk of irreparable harm if the existing permits are allowed to expire.

57. To prevent that irreparable injury, AMTAX/TCH seeks the immediate appointment of a receiver to sell the Hallmark House Apartments to ROEM and ensure that the permitting scheme does not expire. The proceeds of any sale can

then be placed in an escrow account so that the proper distribution can be determined following the conclusion of the JAMS arbitration or further court order.

58.  A receiver should be appointed, because: AMTAX/TCH has valid claims for breach of contract and breach of fiduciary duty, and for the permanent removal of KDF as the Co-General Partner; the entitlement to the existing permits is set to expire on June 21, 2018, and the corresponding provision of affordable housing to the community and value to AMTAX/TCH of continued participation in the LIHTC program is at significant risk; legal remedies will be inadequate to compensate for the loss of affordable housing and participation in the LIHTC program; the harm to AMTAX/TCH that would result from the denial of the appointment of a receiver would greatly outweigh any financial harm caused to KDF by the appointment of a receiver; AMTAX/TCH has a likelihood of success in this action (as well as the JAMS arbitration), as KDF has repeatedly breached its contractual and fiduciary duties, and placed the supply of affordable housing at risk; and the appointment of a receiver to sell the property and escrow the proceeds from the sale will protect the interests of AMTAX/TCH, the Partnership, and the community.

## PRAYER FOR RELIEF

WHEREFORE, AMTAX/TCH pray for judgment as follows:

1.  The appointment of a receiver to facilitate the immediate sale of the property;

2.  Damages in accordance with proof;

3.  Exemplary and punitive damages in an amount to be established at trial;

4.  Interest on the amounts awarded at the legal rate;

5.  Dissolution of the Partnership and accounting relating thereto;

6. Attorneys' fees, costs, and expenses as authorized by Section 16.09 and/or 16.12(c) of the Partnership Agreement;

7. Costs of suit incurred herein; and

8. Such other and further relief as the arbitrator deems just and proper.

DATED: June 15, 2018

BOIES SCHILLER FLEXNER LLP
CHRISTOPHER G. CALDWELL
ERIC S. PETTIT

By ____/s/ Christopher G. Caldwell____
CHRISTOPHER G. CALDWELL
Attorneys for Plaintiffs
AMTAX Holdings 463, LLC, and
Tax Credit Holdings III, LLC

## **DEMAND FOR JURY TRIAL**

Plaintiffs AMTAX Holdings 463, LLC, and Tax Credit Holdings III, LLC hereby demand a trial by jury on all issues triable by a jury in the above entitled action.

DATED: June 15, 2018

BOIES SCHILLER FLEXNER LLP
CHRISTOPHER G. CALDWELL
ERIC S. PETTIT


By /s/ Christopher G. Caldwell
    CHRISTOPHER G. CALDWELL
Attorneys for Plaintiffs
AMTAX Holdings 463, LLC, and
Tax Credit Holdings III, LLC